UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

UNITED STATES OF AMERICA,  :

       v.  :

                                       11 Crim. 312 (JGK)

                            :

JAMES RUSSELL,
           Defendant.  :

------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF JAMES RUSSELL'S MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS

Stephanie M. Carvlin
Counsel for James Russell
111 Broadway, Suite 701
New York, New York 10006
212-748-1636

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT**..................................................................1

**STATEMENT OF FACTS**.......................................................................2

    **ARGUMENT**

    **POINT ONE**

    **THE POLICE LACKED THE REQUISITE REASONABLE SUSPICION TO CONDUCT A TERRY-STOP OF MR. RUSSELL**.....................4

    **The Police Seized Mr. Russell When They Directed Him To Stand And He Complied With That Order**..................................................4

    **The Anonymous Tip the Police Had Received Did Not Provide Reasonable Suspicion to Seize Mr. Russell**..................................5

    **POINT TWO**

    **THE STATEMENTS THAT MR. RUSSELL MADE TO THE POLICE FOLLOWING HIS ARREST MUST BE SUPPRESSED AS THE FRUIT OF THE UNCONSTITUTIONAL STOP AND SEARCH**..........................................................................................8

    **CONCLUSION**......................................................................................9

# TABLE OF AUTHORITIES

## Constitutional Provision

U.S. Const. amend. IV..................................................................................4

## Statutes

18 U.S.C. §922(g)........................................................................................1

New York Penal Law §265.01(2)............................................................1, n2

New York Penal Law §265.02(1)............................................................1, n1

## Federal Rules

Federal Rule of Criminal Procedure 12(b)(3)(C)

## Cases

### United States Supreme Court

Alabama v. White,
    496 U.S. 325 (1990)...........................................................................6

Arkansas v. Sanders,
    442 U.S. 753 (1979)...........................................................................4

Brown v. Illinois,
    422 U.S. 590 (1975)...........................................................................8

California v. Acevedo,
    500 U.S. 565 (1991)...........................................................................4

Florida v. J. L.,
    529 U.S. 266 (2000).......................................................................5, 6

Katz v. United States,
    389 U.S. 347 (1967)...........................................................................4

Miranda v. Arizona,
    384 U.S. 436 (1964).....................................................................3, n3

Terry v. Ohio,
    392 U.S. 1 (1968)...............................................................................4

Wong Sun v. United States,
    371 U.S. 471 (1963).................................................................................8-9

**Circuit Courts of Appeals**

United States v. Casado,
    303 F.3d 440 (2d Cir. 2000).................................................................8, n6, 9

United States v. Ruidiaz,
    529 F.3d 25 (1st Cir. 2008)...........................................................................5

United States v. Simmons,
    560 F.3d 98 (2d Cir. 2009)............................................................................5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

UNITED STATES OF AMERICA,       :

       v.                              :

                                          11 Crim. 312 (JGK)

                             :

JAMES RUSSELL,
           Defendant.       :

------------------------------------------------------------x

## PRELIMINARY STATEMENT

On July 11, 2010, James Russell was arrested by officers of the New York City Police Department ("NYPD") and charged with criminal possession of a weapon in the third and fourth degrees in violation of New York Penal Law §§265.02(1)[1] and 265.01(2).[2] The United States Attorney's Office for the Southern District of New York filed a complaint based on the same conduct on March 22, 2011. (Exhibit A to Carvlin Affidavit.) Mr. Russell subsequently was indicted for possessing a firearm in and affecting commerce after having previously been convicted of a crime punishable by imprisonment for a term exceeding one year in violation of 18 U.S.C. §922(g)(1). This Memorandum of

---

[1] Penal Law §265.02(1) provides as follows: "A person is guilty of criminal possession of a weapon in the third degree when: (1) Such person commits the crime of criminal possession of a weapon in the fourth degree as defined in subdivision one, two, three or five of section 265.01, and has been previously convicted of any crime[.]"

[2] Penal Law §265.01(2) provides as follows: "A person is guilty of criminal possession of a weapon in the fourth degree when: (1) He possesses any firearm, electronic dart gun, electronic stun gun, gravity knife, switchblade knife, pilum ballistic knife, metal knuckle knife, cane sword, billy, blackjack, bludgeon, metal knuckles, chuka stick, sand bag, sandclub, wrist-brace type slingshot or slungshot, shirken or "Kung Fu star"[.]"

1

Law is submitted in support of Mr. Russell's Motion to Suppress the gun that forms the basis for this charge and statements that resulted from custodial interrogation.

## STATEMENT OF FACTS

The Complaint filed by the government in this case alleges that on the evening of July 10, 2010, an officer with the NYPD received a tip from "a confidential source of information" that "there were two individuals who each had a gun in front of 55 Richman Plaza, Bronx, New York." (Exhibit A at ¶2.a.) The complaint does not specify whether the identity of the source of this tip was known to the officer, whether the officer knew how to contact the source or whether the source had previously provided reliable information to the officer. (Exhibit A.) Nor does the complaint indicate how the source acquired the information that he or she passed onto the NYPD. (Id.) The complaint indicates only that the source gave a vague description of one of the "individuals" who purportedly had a gun: "male black wearing a multi-colored polo shirt." (Id. at ¶3.a.)

The police responded to 55 Richman Plaza. There in a courtyard in front 55 Richman a large group of individuals was gathered, waiting to gain entry into the building to attend a party. (Russell Affidavit at ¶4.) Mr. Russell, a male of African American descent, was in the courtyard, as well. He was wearing a long, baggy stripped polo shirt and baggy cargo shorts. (Id. at ¶9.) Mr. Russell was not engaging in any overtly illegally conduct. (Russell Affidavit at ¶7.) Nevertheless, although Mr. Russell was not the only black male at the location who was

wearing a polo shirt, NYPD officers approached him and told him to stand up. (Exhibit A at ¶4.d.) The complaint alleges that once Mr. Russell stood, the officer "saw the outline of a gun in Russell's front pants pocket." (Id. at ¶4.3.) Mr. Russell affirms that the gun "fit easily into the pocket" of his shorts. Given the length of his shirt and the bagginess of his clothing, the gun did not create a bulge. Nor was the outline of a gun visible. (Russell Affidavit at ¶9.) Nevertheless, an NYPD officer reached into Mr. Russell's pants pocket and removed an unloaded revolver.[3] The police also searched other men at the location, but Mr. Russell was the only one arrested. (Russell Affidavit at ¶6.)

Following his arrest, Mr. Russell was taken to a police precinct for processing. The complaint in this case recites that Mr. Russell was read his Miranda[4] rights and waived those rights. (Exhibit A at ¶5.a., b. and c.) In response to police questioning, he made oral and written statements admitting that he possessed a gun at approximately 6:00 a.m. and again at approximately 8:00 a.m. (Russell Affidavit at ¶11.) Mr. Russell was charged with criminal possession of a weapon in the third and fourth degrees in violation of New York State law. (Carvlin Affidavit at ¶13.)

On March 22, 2011, the United States Attorney's Office for the Southern District of New York filed the felon-in-possession charge based on the same conduct that formed the basis for the state charges. (Id. at ¶14.)

---

[3]Discovery provided by the government also indicates that Mr. Russell had no bullets for the weapon with him when he was arrested.
[4]Miranda v. Arizona, 384 U.S. 436 (1964).

# ARGUMENT

## POINT ONE

### THE POLICE LACKED THE REQUISITE REASONABLE SUSPICION TO CONDUCT A TERRY-STOP[5] OF MR. RUSSELL

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. Warrantless searches and seizures are *per se* unreasonable unless they fall within a recognized exception. Katz v. United States, 389 U.S. 347, 357 (1967). Because the police stopped and searched Mr. Russell without a warrant, the government bears the burden of demonstrating that the police conduct fell within an exception to the warrant requirement. *See* Arkansas v. Sanders, 442 U.S. 753, 759-60 (1979), *abrogated on other grounds* California v. Acevedo, 500 U.S. 565 (1991).

### The Police Seized Mr. Russell When They Directed Him To Stand And He Complied With That Order

The United States Supreme Court has held that, law enforcement does not violate the Fourth Amendment proscription against warrantless seizures by briefly detaining an individual if the officer has a reasonable suspicion that the individual is engaged in criminal activity. Terry v. Ohio, 392 U.S. 1 (1968). However, the necessary reasonable suspicion to stop Mr. Russell was lacking in this case.

---

[5] Terry v. Ohio, 392 U.S. 1 (1968).

A seizure within the meaning of Terry v. Ohio occurs when "(1) a person obeys a police officer's order to stop or (2) a person that does not submit to an officer's show of authority is restrained." United States v. Simmons, 560 F.3d 98, 105 (2d Cir. 2009). Under these standards, Mr. Russell was seized within the meaning of Terry when the police directed him to stand up. As the Second Circuit repeatedly has held, a Terry stop must be justified at its inception. Id. at 105. Thus, this Court has to evaluate whether the quantum of information the police had when they told Mr. Russell to stand up – before they purportedly saw the outline of a gun – was sufficient to establish reasonable suspicion that Mr. Russell was illegally in possession of a weapon. It was not.

### The Anonymous Tip the Police Had Received Did Not Provide Reasonable Suspicion to Seize Mr. Russell

The complaint recites that the police received the tip that led to Mr. Russell's seizure from "a confidential source." The complaint does not state that the identity of the source was known to the police or that the police had other means to identify and locate the source and thereby hold him or her responsible if the information he or she provided was false. Cf United States v. Ruidiaz, 529 F.3d 25, 31 (1st Cir. 2008)(Likelihood of prevarication was diminished where 911 caller confirmed his telephone number and agreed police could call back, thereby demonstrating that caller knew that his identity could be discovered). Under these circumstances, the reliability of the source must be determined by employing the standards used to evaluate anonymous tips.

In Florida v. J. L., 529 U.S. 266 (2000), the United States Supreme Court detailed how a court must evaluate whether anonymous tips provide reasonable

suspicion for a Terry stop and frisk. The facts in J.L. are virtually identical to those the complaint in this case recites. In J. L., the Miami police received an anonymous call reporting that a young black man, wearing a plaid shirt and standing at a specified location, was carrying a gun. Two officers responded to the location, arriving about six minutes after the call was received. Three black men were there, but only J. L. was wearing a plaid shirt. Without requesting any information, and without observing any suspicious conduct by any of the men, one of the officers approached the defendant and frisked him, recovering a gun from his pocket. The case made its way through the Florida state courts before the United States Supreme Court granted *certiorari*.

The Supreme Court held that an anonymous tip that a person with a particular description at a particular location is carrying a gun alone is not sufficiently reliable to provide reasonable suspicion of criminal activity, even if the police corroborate the tipster's information:

> An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just it its tendency to identify a determinate person.

J. L., 529 U.S. at 272.

The Supreme Court contrasted the value of the police corroboration of the type of information provided by the caller in J. L. with the that of the police confirmation of the tip in Alabama v. White, 496 U.S. 325 (1990), the Court's most recent decision in the area prior to J. L. In White, the Montgomery Police

Department received an anonymous telephone tip during which an unknown caller stated that the respondent, Vanessa White, would be leaving a specific building of an apartment complex at a particular time. She would be holding a brown attaché case that contained about an ounce of cocaine. According to the caller, Ms. White would leave the apartment and drive a brown Plymouth station wagon with a broken right taillight to a certain motel. Two police officers staked out the location and saw Ms. White leave the building as predicted. She entered the described station wagon and drove a route that, while circuitous, was the most direct way to reach the motel. Before Ms. White arrived at her ultimate destination, the police stopped her, requested that she step out of the car and asked her if they could look for cocaine. When Ms. White gave her permission for the search, the officers found a locked brown attaché case in the car. With Ms. White's help, they opened the case. Inside was marijuana. The police found an additional three milligrams of cocaine in Ms. White's pursue during processing.

The Supreme Court held that the tip in White, as corroborated by the police, was adequate to provide reasonable suspicion for the car stop. It was not the detail of tip that persuaded the Court, but the nature of the information. The caller did not just describe Ms. White and her car and her apartment. The caller predicted her future movements. The caller knew that Ms. White would get into her car at a certain time and place and that she would drive to a particular motel. Only someone who truly possessed reliable information about Ms. White's plans could have provided this information. A casual acquaintance or a friend with a grudge couldn't have made this up.

Judged by these standards, the tip in this case clearly was insufficient to constitute reasonable suspicion to stop Mr. Russell. Here, as in J.L., the police source provided only a description of the alleged perpetrators. Notably, the description was even less detailed than that the tipster gave in J.L. The complaint does not outline what description was provided as to one of the individuals – gender, race, age, clothing, conduct. The description of the other "individual" was virtually identical to that provided by the tipster in J.L.: gender (male), race (black), clothing (plaid shirt v. multi-colored polo shirt). Most significantly, unlike in White, the police source in this case provided no predictive information. Nor did any behavior by Mr. Russell prior to the police seizure serve to increase the level of suspicion. (Russell Affidavit at ¶7.)

The police lacked reasonable suspicion to stop Mr. Russell. As a result, the gun that was discovered during the subsequent search of Mr. Russell must be suppressed.[6]

### POINT TWO

### THE STATEMENTS THAT MR. RUSSELL MADE TO THE POLICE FOLLOWING HIS ARREST MUST BE SUPPRESSED AS THE FRUIT OF THE UNCONSTITUTIONAL STOP AND SEARCH

The statements Mr. Russell made following his illegal seizure by the police were obtained by exploitation of that Fourth Amendment violation. As a result, the statements must be suppressed. Brown v. Illinois, 422 U.S. 590, 602

---

[6]Under J.L., the police officer who recovered the gun also lacked a constitutionally sufficient basis to stick his hand into Mr. Russell's pocket. *See also* United States v. Casado, 303 F.3d 440, 447 (2d Cir. 2000)(drugs suppressed where police did not take the less intrusive step of patting the exterior of the defendant's clothing before reaching into his pocket).

(1975)(Miranda warnings alone are not sufficient to attenuate the taint of an unconstitutional arrest); Wong Sun v. United States, 371 U.S. 471, 485-86 (1963)(statements elicited by police from suspect almost immediately after he was illegally placed under arrest were the suppressible fruits of the Fourth Amendment violation); *See also* Casado, 303 at 449.

## CONCLUSION

For the reasons stated herein, this Court should suppress the gun and statements obtained from Mr. Russell on July 10 and 11, 2010, or in the alternative conduct an evidentiary hearing.

Dated: New York, New York
June 10, 2011

Respectfully submitted,

Stephanie M. Carvlin
Counsel for James Russell